UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN VINCENZO AND JANICE VINCENZO,
individually and as Natural Guardians of their child,
E.V., a minor over the age of 14,

                    Plaintiffs,

v.                                                                         1:21-CV-0308
                                                                           (GTS/TWD)
WALLKILL CENTRAL SCHOOL DISTRICT;
ORANGE-ULSTER BOCES; ANTHONY WHITE;
DEREK ADAMS; and JOSEPH SALAMONE,

                    Defendants.

_____

APPEARANCES:                                           OF COUNSEL:

RUBINO LAW FIRM, P.C.                               JENNIELENA RUBINO, ESQ.
   Counsel for Plaintiffs
1 Alexander St., Suite 1222
Yonkers, NY 10701

DRAKE, LOEB LAW FIRM                            NICHOLAS A. PASCALE, ESQ.
   Counsel for Defendants Wallkill Central School
   District, Anthony White, Derek Adams, and
   Joseph Salamone
555 Hudson Valley Ave., Suite 100
New Windsor, NY 12553

CATANIA, MAHON, & RIDER, PLLC              PAUL S. ERNENWEIN, ESQ.
   Counsel for Defendant Orange-Ulster Boces
641 Broadway
Newburgh, NY 12550

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently, before the Court, in this civil rights action filed by Steven Vincenzo and

Janice Vincenzo, individually and as natural guardians of their child, E.V., a minor over the age

of 14, (collectively, "Plaintiffs") against Orange-Ulster Boces ("Defendant OU Boces") and

Wallkill Central School District, Anthony White, Derek Adams, and Joseph Salamone (the

"Wallkill Defendants") (collectively, "Defendants"), are the Wallkill Defendants' motion to

dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and

Defendant OU Boces' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

(Dkt. Nos. 9, 15.) For the reasons set forth below, the Court grants the Wallkill Defendants'

motion to dismiss under Fed. R. Civ. P. 12(b)(6), and grants in part and denies in part Defendant

OU Boces' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## I.   RELEVANT BACKGROUND

### A.   Plaintiffs' Complaint and Relevant Procedural History

Generally, in their Complaint filed on March 19, 2021, Plaintiffs assert the following

four claims against Defendants: (1) a disability discrimination claim under Section 504 of the

Rehabilitation Act of 1973 ("Section 504"); (2) a disability discrimination claim under the

Americans with Disabilities Act ("ADA"); (3) an Equal Protection claim pursuant to 42 U.S.C. §

1983 ("Equal Protection" or "Section 1983"); and (4) a claim for negligent supervision.[1] (Dkt.

No. 1 [Pl. Compl.].)[2]

On May 11, 2021, the Wallkill Defendants filed their motion to dismiss Plaintiffs'

---

[1]     Based on a review of the Complaint, Plaintiffs' so-called "state claims" appear to be a claim for negligent supervision. (Dkt. No. 1, at ¶¶ 63-77.) The Court refers to this claim as either their "state law claim" or their "negligent supervision claim" throughout this Decision and Order.

[2]     The Court notes that, liberally construed, Plaintiffs' federal claims are asserted against both the Wallkill Defendants and Defendant OU Boces. (Dkt. No. 1, at 13 [requesting an award of compensatory damages "resulting from *Defendants'* deliberate indifference to the disability harassment] [emphasis added]; *id.* at ¶ 61 [alleging deliberate indifference against the "District"].)

Complaint for failure to state a claim. (Dkt. No. 9.) On June 24, 2021, Defendant OU Boces filed its motion for judgment on the pleadings. (Dkt. No. 14.) On July 15, 2021, Plaintiffs filed their opposition to Defendants' motions. (Dkt. No. 15.) On July 29, 2021, Defendant OU Boces filed its reply in support of its motion for judgment on the pleadings. (Dkt. No. 16.) That same day, the Wallkill Defendants filed their reply in support of their motion to dismiss. (Dkt. No. 17.)

### B.      Summary of Parties' Briefing on Defendants' Motions

#### 1.      The Wallkill Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss, the Wallkill Defendants set forth eight arguments. (Dkt. No. 9-5.)

First, the Wallkill Defendants argue that Plaintiffs' federal claims are barred by a prior Settlement Agreement. (*Id.* at 6-8.) More specifically, the Wallkill Defendants argue that Plaintiffs, with the advice and representation of counsel, executed a Stipulation of Settlement ("Settlement Agreement") on December 6, 2020, that settled their federal claims against the Wallkill Defendants in exchange for a monetary payment, including attorneys' fees. (*Id.* at 6.) The Wallkill Defendants argue that the Settlement Agreement contains a broad release in favor of Defendant Wallkill and its employees, which necessarily includes the individual Defendants named in this lawsuit. (*Id.*) The Wallkill Defendants argue that the Settlement Agreement provided that, in exchange for three monetary payments, Plaintiffs would waive all claims referenced in the first paragraph of the Settlement Agreement, which expressly includes claims under the ADA and Section 504. (*Id.* at 7.) The Wallkill Defendants argue that the Settlement Agreement expressly covers all school years up to and including the 2022-2023 school year, which therefore covers the dates alleged in Plaintiffs' Complaint (i.e., 2016-2019). (*Id.* at 8.) The

Wallkill Defendants argue that, outside of the ADA and section 504 claims, the Settlement Agreement includes all other federal claims that could have been brought to that date, including any Section 1983 claim. (*Id.*) The Wallkill Defendants argue that, although the Settlement Agreement includes a carve-out for alleged claims for "personal injuries" as identified in Plaintiffs' Notice of Claim, which would include Plaintiffs' claim for negligent supervision arising under New York State law, there is no question that the Settlement Agreement bars the federal claims asserted under the ADA, Section 504, and Section 1983. (*Id.*) The Wallkill Defendants argue that the Settlement Agreement is supported by valuable consideration, is clear and unequivocal, and is binding upon Plaintiffs, who were advised and represented by counsel. (*Id.*)

Second, the Wallkill Defendants argue that the Court must dismiss Plaintiffs' ADA claim and Section 504 claim against the individual Defendants (i.e., White, Adams, and Salamone), because individual liability does not exist under those federal statutes. (*Id.* at 9.)

Third, the Wallkill Defendants argue that, even if the Settlement Agreement does not bar Plaintiffs' Section 1983 claim, Plaintiffs' Complaint fails to adequately plead an Equal Protection claim under Section 1983. (*Id.* at 9-10.) More specifically, the Wallkill Defendants argue that, although Plaintiffs assert "disability harassment" as the basis for their Equal Protection claim, case law does not recognize disability status as a suspect classification under the Equal Protection Clause. (*Id.*) The Wallkill Defendants additionally argue that, to state an Equal Protection claim in the context of alleged peer-on-peer harassment (as Plaintiffs allege here), Plaintiffs' Complaint must allege facts plausibly suggesting that E.V. was afforded a lower level of protection than was afforded to other students. (*Id.* at 10.) The Wallkill

4

Defendants further argue that Plaintiffs cannot proceed on their Equal Protection claim under a "class-of-one" theory, because their Complaint is devoid of any allegation of similarly situated individuals being afforded better treatment than that purportedly afforded to E.V. (*Id.*)

Fourth, the Wallkill Defendants argue that Plaintiffs' Complaint fails to state a claim under Section 1983 against the individual Defendants. (*Id.* at 11-12.) More specifically, the Wallkill Defendants argue that Plaintiffs' Complaint does not contain sufficient facts alleging that the individual Defendants personally participated in a violation of Plaintiffs' constitutional rights, as is required for a Section 1983 claim against the individual Defendants. (*Id.* at 11.)[3]

Fifth, the Wallkill Defendants argue that Plaintiffs' Complaint fails to adequately plead a *Monell* claim against Defendant Wallkill. (*Id.* at 12.) More specifically, the Wallkill Defendants argue that Plaintiffs' Complaint does not include factual allegations plausibly suggesting any of the following three things: (1) that Defendant Wallkill has any "custom or policy" establishing municipal liability under *Monell*; (2) that Defendant Wallkill has adopted a "custom or policy" to cause the sort of injuries Plaintiffs claim to have sustained; and (3) that any of the individual Defendants are endowed with final "policy making" authority for Defendant Wallkill. (*Id.*)

Sixth, the Wallkill Defendants argue that Plaintiffs failed to file a Notice of Claim against the individual Defendants. (*Id.* at 13.) More specifically, the Wallkill Defendants argue that Plaintiffs' Notice of Claim does not name, and is devoid of any claims against, the individual Defendants, and therefore the Court must dismiss the negligent supervision claim against the individual Defendants. (*Id.*)

---

[3]      The Wallkill Defendants also argue that Plaintiffs have not properly served Defendant Adams with process, because he is no longer employed by Defendant Wallkill, and any attempts Plaintiffs may have made to serve him at Defendant Wallkill's office have been ineffective. (Dkt. No. 9-5, at 11, n. 3.)

Seventh, the Wallkill Defendants argue that the Court should not retain pendent jurisdiction over Plaintiffs' remaining state law claim. (*Id.* at 13.)

Eighth, the Wallkill Defendants argue that the Court should not award punitive damages against Defendant Wallkill, because a plaintiff cannot recover punitive damages against a municipality. (*Id.*)

### 2.    Defendant OU Boces' Motion for Judgment on the Pleadings

Generally, in support of its motion for judgment on the pleadings, Defendant OU Boces sets forth five arguments. (Dkt. No. 14-2.)

First, Defendant OU Boces argues that it is covered by the Settlement Agreement between Plaintiffs and the Wallkill Defendants. (*Id.* at 5-6.) More specifically, Defendant OU Boces cites the seventh paragraph of the Settlement Agreement (stating that "the Parties shall hereby release and discharge the District, its assigns, members, officers, employees, representatives, agents and attorneys") as support for its argument that the Settlement Agreement was intended to cover third parties who may not be an express signatory to the Agreement if the potential claims against them arise from a similar nexus of facts. (*Id.*) Defendant OU Boces references the Wallkill Defendants' motion to dismiss and incorporates their arguments regarding the Settlement Agreement. (*Id.*)

Second, Defendant OU Boces argues that the Court should dismiss Plaintiffs' federal claims against it "in the interests of justice." (*Id.* at 6.) More specifically, OU Boces argues that, in the event it is not covered by the Settlement Agreement and the Court dismisses the federal claims against the Wallkill Defendants, the Court should dismiss the federal claims against Defendant OU Boces, because doing so would avoid severance of the related factual claims and

6

save the parties and material witnesses from the undue burden and inconvenience of having to undergo separate, similar trials. (*Id.*)

Third, Defendant OU Boces argues that Plaintiffs fail to allege that it was deliberately indifferent to E.V.'s claimed harassment. (*Id.* at 7-10.) More specifically, Defendant OU Boces argues that Plaintiffs fail to make any factual allegations linking E.V.'s disability to the bullying they claim occurred while E.V. was enrolled at Marguerite Flood High School (i.e., the school within Defendant OU Boces' district). (*Id.* at 8.) Defendant OU Boces argues that Plaintiffs' allegations regarding the recurring teasing and bullying on the school bus during the 2018/2019 academic year are not tied to E.V.'s disability, and that E.V.'s classmates calling her "Autistic E" is insufficient to conclude that the behavior at issue was related to her disability. (*Id.* at 9.) Defendant OU Boces additionally argues that Plaintiffs fail to plausibly allege that it had knowledge of the alleged behavior, and that Plaintiffs vague allegation that E.V. "reported these issues to several [OU Boces] employees" cannot withstand a motion to dismiss. (*Id.*) Defendant OU Boces further argues that Plaintiffs' allegations regarding an assault E.V. sustained during an altercation in the cafeteria at Marguerite Flood High School cannot support Plaintiffs' deliberate indifference claim for three reasons: (1) Plaintiffs fail to allege that this incident was related to E.V.'s disabilities; (2) Plaintiffs fail to allege that the appropriate personnel at Defendant OU Boces had actual knowledge of this incident or that they failed to appropriately respond; and (3) Plaintiffs made the unilateral decision to remove E.V. from Marguerite Flood High School before Defendant OU Boces could react. (*Id.* at 9-10.)

Fourth, Defendant OU Boces argues that Plaintiffs failed to allege differential treatment sufficient to state a claim under the Equal Protection Clause and Section 1983. (*Id.* at 10-11.)

7

More specifically, Defendant OU Boces argues that Plaintiffs' Complaint does not contain any factual allegations to support an inference that it treated E.V. differently because of her disabilities. (*Id.* at 10.) Defendant OU Boces additionally argues that, because the Supreme Court has held that disability status is not a suspect classification under the Equal Protection Clause, the Court must dismiss this claim. (*Id.* at 11.)

Fifth, Defendant OU Boces argues that, should the Court dismiss all federal claims against it, the Court should exercise its discretion to decline supplemental jurisdiction over Plaintiffs' state law claim. (*Id.*)

### 3. Plaintiffs' Opposition to the Defendants' Motions

Generally, in opposition to the Wallkill Defendants' motion to dismiss and Defendant OU Boces' motion for judgment on the pleadings, Plaintiffs set forth six arguments. (Dkt. No. 15-1.)

First, Plaintiffs argue that they may proceed against the individual Defendants, despite not specifically identifying them in the Notice of Claim. (*Id.* at 9.) Plaintiffs argue that, although the New York Court of Appeals has yet to resolve a split among the intermediate appellate courts as to whether a plaintiff must name individual defendants in the Notice of Claim, three of the four Appellate Divisions have rejected this argument. (*Id.*)

Second, Plaintiffs argue that the Settlement Agreement does not prevent Plaintiffs from proceeding against the Wallkill Defendants on their federal claims. (*Id.* at 9-10.) More specifically, Plaintiffs argue that the Settlement Agreement expressly allows them to proceed with the claims asserted in their Notice of Claim, which includes allegations supporting both state and federal claims against the school district arising from the bullying. (*Id.* at 9.) Plaintiffs

argue that, although the Notice of Claim does not expressly state these federal and state claims, in addition to asserting "negligent supervision," the Notice of Claim cites "bullying from other students," cyber and verbal bullying, intimidation, physical menacing, and public humiliation. (*Id.*) Plaintiffs argue that these allegations constitute the basis for Plaintiffs' deliberate indifference claim under the ADA and Section 504, meaning the Court should not dismiss those federal claims against the Wallkill Defendants. (*Id.* at 10.)

Third, Plaintiffs argue that the Settlement Agreement they reached with Defendant Wallkill does not foreclose litigation against Defendant OU Boces. (*Id.* at 10-12.) More specifically, Plaintiffs argue that the Settlement Agreement did not resolve any claims against Defendant OU Boces, an entity separate from Defendant Wallkill. (*Id.* at 10.) Plaintiffs argue that nothing in the Settlement Agreement suggests the parties intended to bind Defendant OU Boces. (*Id.*) Plaintiffs argue that Defendant OU BOCES cites no authority for the proposition that a settlement with one party covers any claims that might be asserted against a third party that has no legal connection to the settling defendant. (*Id.*) Plaintiffs argue that general principles of contract law support their position that, because Defendant OU Boces was not a signatory to the Settlement Agreement, Plaintiffs may proceed against Defendant OU Boces. (*Id.* at 11.)

Fourth, Plaintiffs argue that their Complaint asserts a plausible claim against Defendants for disability harassment under the ADA and Section 504 of the Rehabilitation Act. (*Id.* at 12-17.) More specifically, Plaintiffs argue that the allegations against the Wallkill Defendants demonstrate a consistent pattern of disability-related harassment against E.V., as well as indifference to the mistreatment E.V. allegedly suffered at school. (*Id.* at 13.) Plaintiffs additionally argue that they may pursue Equal Protection claims against Defendants White and

Adams under Section 1983, because this statute permits liability in peer-to-peer harassment against public defendants. (*Id.*) Plaintiffs further argue that it may pursue its disability harassment claims against Defendant OU Boces for the following six reasons: (1) Plaintiffs' Complaint adequately alleges that students harassed E.V. based on her disability, because Plaintiffs' Complaint includes allegations that E.V.'s classmates called her "Autistic E," and any argument by Defendant OU Boces that this is merely neutral teasing is a disputed inference that should not be addressed on a motion for judgment on the pleadings (*id.* at 13-14); (2) Plaintiffs' Complaint includes factual allegations that Plaintiffs reported the harassment to several employees at Marguerite Flood High School, meaning Defendant OU Boces had actual knowledge of E.V.'s harassment (*id.* at 14); (3) even if Plaintiffs complained to employees who were not in positions of disciplinary authority, those employees failed to notify their superiors about it, hindering remedy of the harassment (*id.* at 15); (4) Defendant OU Boces' failure to investigate E.V.'s allegations, including those from the events in the cafeteria and on the school bus, constituted deliberate indifference (*id.*); (5) although Defendant OU Boces argues that the allegations in Plaintiffs' Complaint regarding the altercation in the cafeteria were unrelated to E.V.'s disabilities, Defendant OU Boces does not read the Complaint under the totality of the circumstances, which permits a jury to infer that, because E.V.'s classmates were physically and verbally harassing her based on her autism, all subsequent harassment was motivated by her disability (*id.* at 15-16); and (6) Plaintiffs' Complaint does include allegations showing that Plaintiffs are asserting federal claims against Defendant OU Boces (*id.* at 16-17).

Fifth, Plaintiffs argue that they may proceed against Defendant OU Boces under Section 1983. (*Id.* at 17-18.) More specifically, Plaintiffs argue that Defendant OU Boces does not assert

that disability harassment against it is not actionable under Section 1983. (*Id.*) Plaintiffs

additionally argue that there is no requirement that Plaintiffs prove that similarly situated

students were treated differently than E.V. for this claim to survive. (*Id.*) Plaintiffs argue that,

should the Court find that Plaintiffs may proceed against Defendant OU Boces under the ADA

and Section 504, then it should also permit them to proceed under Section 1983. (*Id.* at 18.)

Sixth, Plaintiffs argue that the Court should retain jurisdiction over their state law claim.

(*Id.* at 18-22.) More specifically, Plaintiffs argue that the Court has supplemental jurisdiction

over the state and federal claims against Defendant OU Boces, as well as the state claim against

Defendant Wallkill. (*Id.* at 18.) Plaintiffs argue that their bullying/harassment claims against

Defendant Wallkill and Defendant OU Boces arise from the same nucleus of operative facts,

because the common thread in the claims against Defendants is that Plaintiffs' disabled daughter

was subjected to offensive and violent harassment from classmates while enrolled in both

educational entities. (*Id.* at 20.) Plaintiffs argue that the damages E.V. suffered at Defendant OU

BOCES compounded the pain and suffering endured at Defendant Wallkill, and that, considering

E.V.'s fragile state, her deposition should take place in one sitting and she should only be

subjected to one trial. (*Id.*) Plaintiffs further argue that none of the factors in 28 U.S.C. § 1367(c)

require the Court to decline supplemental jurisdiction over the claim against Defendant Wallkill,

and that there is no basis to dismiss the federal claim against Defendant OU Boces in the

interests of justice. (*Id.* at 20-22.)

## 4.    The Wallkill Defendants' Reply in Support of Their Motion to Dismiss

Generally, in reply to Plaintiffs' opposition, the Wallkill Defendants set forth seven

arguments. (Dkt. No. 17.)

11

First, the Wallkill Defendants argue that a plain reading of the Settlement Agreement shows that Plaintiffs specifically settled and released their federal claims under the ADA, Section 504, and any other federal law, including the federal claims brought under Section 1983. (*Id.* at 4-5.) More specifically, the Wallkill Defendants argue that the Notice of Claim does not expressly allege any federal claims against Defendant Wallkill—a fact Plaintiffs concede. (*Id.* at 4.) The Wallkill Defendants argue that the plain language of the Settlement Agreement provided a carve out only for "a claim for personal injuries as alleged in the Parents and Student's Notice of Claim and in any subsequent litigation resulting from the Notice of Claim." (*Id.* at 5.) The Wallkill Defendants argue that this language carves out only claims for "personal injuries" (i.e., tort claims under New York State law), and that the plain language of the Settlement Agreement and Notice of Claim provide for no other result. (*Id.*) The Wallkill Defendants further argue that a Notice of Claim is a creature of New York State law used to preserve tort claims against municipal defendants, and that federal claims are not subject to the New York State Notice of Claim statute. (*Id.*) The Wallkill Defendants argue that there is no legal requirement to assert federal claims in the Notice of Claim, and the Court should therefore not infer that the parties intended to include unpled federal claims within the scope of the carve out. (*Id.*)

Second, the Wallkill Defendants argue that, even if Plaintiffs' federal claims are not barred by the Settlement Agreement, the federal claims against the individuals must be dismissed for the following three reasons: (1) Plaintiffs do not address, and therefore concede, that individual liability does not exist under Section 504 and the ADA; (2) Plaintiffs' Complaint does not include factual allegations showing individual involvement in connection to the Equal Protection claim; and (3) Plaintiffs' Complaint does not sufficiently allege that any individual

defendant intentionally acted with "discriminatory purpose" "because of" the alleged adverse impacts such acts might have upon a particular class, as is required for an Equal Protection claim against the individual Defendants. (*Id.* at 6.)

Third, the Wallkill Defendants argue that, even if Plaintiffs' Equal Protection claim under Section 1983 is not barred by the Settlement Agreement, Plaintiffs' Complaint nonetheless fails to state any viable Equal Protection claim. (*Id.* at 7.) More specifically, the Wallkill Defendants argue that, because Plaintiffs fail to show disparate treatment of similarly situated comparators based on or arising from protected class status, they cannot assert a viable Equal Protection claim in either the traditional or "class of one" context. (*Id.*)

Fourth, the Wallkill Defendants argue that Plaintiffs did not address, and therefore concede, the Wallkill Defendants' challenge to Plaintiffs' claim under *Monell*. (*Id.* at 8.) The Wallkill Defendants additionally argue that, because they have shown that Plaintiffs do not state an Equal Protection claim under Section 1983, the Court need not address whether Defendant Wallkill may be liable for any such claim under *Monell*. (*Id.*)

Fifth, the Wallkill Defendants argue that, even if Plaintiffs' ADA and Section 504 claims are not barred by the Settlement Agreement, Plaintiffs' Complaint nonetheless fails to state a claim under either statute on a theory of "deliberate indifference to disability harassment." (*Id.* at 8-9.) More specifically, the Wallkill Defendants argue that Plaintiffs' Complaint fails to plausibly show a causal connection between the alleged harassment and E.V.'s disability (i.e., that the harassment was "because of" E.V.'s disability). (*Id.* at 8.) The Wallkill Defendants argue that it is unclear whether Plaintiffs allege that the harassment occurred specifically because of E.V.'s disability status or because the disability may have rendered her more susceptible to peer

13

harassment, but that, because Plaintiffs' Complaint suggests the latter cause, they did not adequately plead a "deliberate indifference" claim under Section 504 or the ADA. (*Id.* at 9.) The Wallkill Defendants further argue that Plaintiffs failed to sufficiently allege facts that Defendant Wallkill had notice of the alleged peer harassment, and that, absent actual notice, it is implausible to causally connect the peer-on-peer harassment with the criticisms of Defendant Wallkill's response or lack of response. (*Id.*) The Wallkill Defendants argue that, without an allegation of actual knowledge, Plaintiffs' Complaint fails to adequately allege claims under Section 504 or the ADA. (*Id.*)

Sixth, the Wallkill Defendants argue that, although Plaintiffs correctly identified divergent precedent among New York appellate courts on the consequences of failing to name an individual defendant in a Notice of Claim, the Court need not address this issue because, absent any viable federal claims, the Court is not required to exercise pendent jurisdiction. (*Id.*)

Seventh, the Wallkill Defendants argue that the Court should not permit Plaintiffs to amend their Complaint because amendment would be futile. (*Id.* at 10.)[4] More specifically, the Wallkill Defendants argue that, at least with respect to the federal claims against them, those claims were released and extinguished by the Settlement Agreement. (*Id.*)

### 5.    Defendant OU Boces' Reply in Support of Its Motion for Judgment on the Pleadings

Generally, in reply to Plaintiffs' opposition, Defendant OU Boces sets forth four arguments. (Dkt. No. 16.)

First, Defendant OU Boces argues that Plaintiffs failed to state a claim for deliberate

---

[4]    The Wallkill Defendants also note that Plaintiffs did not actually cross-move to amend their Complaint, but instead informally raised the issue of possible amendment in their opposition memorandum of law. (Dkt. No. 17, at 10.)

indifference under the ADA. (*Id.* at 4-6.) More specifically, Defendant OU Boces argues that Plaintiffs' Complaint is devoid of any indication that the alleged bullying against E.V. was related to her disability, or that any of Defendant OU Boces' employees had notice of such behavior. (*Id.* at 4-5.) Defendant OU Boces argues that the allegation that classmates called E.V. "Autistic E" does not provide a sufficient link between the disability and alleged bullying, because accusations of mental deficiency are among the most common insults used by bullies in the school bus setting. (*Id.* at 5.) Defendant OU Boces additionally argues that, because Plaintiffs did not identify to whom (or when) they reported the issues regarding the harassment, their allegation that Plaintiff Janet Vincenzo "reported these issues to several employees at Marguerite Flood High School" is insufficient to support a deliberate indifference claim, because it is not plausible that she will be able to testify to these facts under oath. (*Id.*) Defendant OU Boces further argues that, with respect to the cafeteria incident, Plaintiffs' Complaint specifically alleges that Plaintiff was assaulted because she was accused of spreading a rumor, plausibly suggesting that this assault did not occur because of E.V.'s disability. (*Id.* at 5-6.)

Second, Defendant OU Boces refers to the Wallkill Defendants' arguments in favor of dismissal related to the Settlement Agreement. (*Id.* at 6.)

Third, Defendant OU Boces argues that Plaintiffs' Complaint focuses on state law negligent supervision, with their federal claims ancillary to the state law claims, meaning the Court should dismiss Plaintiffs' federal causes of action against Defendant OU Boces for failure to state a claim and should also decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. (*Id.*)

Fourth, and finally, Defendant OU Boces argues that, should the Court grant leave to

amend and Plaintiffs thereafter fail to correct these pleading deficiencies, the Court should dismiss their federal claims with prejudice. (*Id.* at 7.)

## II.     RELEVANT PROCEDURAL LEGAL STANDARDS

### A.     Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp.2d at 212, n. 20 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement

16

that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 212, n.17 (emphasis added).[5]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Id.* at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). "As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard." *Rusyniak,* 629 F.Supp.2d at 214; *Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, although this does not mean that a

---

[5]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, although the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

**B.      Legal Standards Governing a Motion for Judgment on the Pleadings**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of*

*Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2021) (collecting cases). In evaluating such motions,

district courts must accept all allegations in the Complaint as true and draw all reasonable

inferences in the Plaintiffs' favor. *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v.*

*Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).

**C.      Legal Standards Governing a Motion to Amend a Pleading**

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states

that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2);

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.

1992). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given

"[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182; *S.S.*

*Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v.*

*First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010)

(Suddaby, J.); *Jones v. McMahon,* 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11,

2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss . . . ." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y.

2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

19

Under Local Rule 15.1(a), "[a] party moving to amend a pleading pursuant to Fed. R.

Civ. P. 14, 15, [or] 19-22 must attach an unsigned copy of the proposed amended pleading to its

motion papers." N.D.N.Y. L.R. 15.1(a). "Except if the Court otherwise orders, the proposed

amended pleading must be a complete pleading, which will supersede the pleading sought to be

amended in all respects." *Id.* "The motion must set forth specifically the proposed insertions and

deletions of language and identify the amendments in the proposed pleading, either through the

submission of a redline/strikeout version of the pleading sought to be amended or through other

equivalent means." *Id.*

### D. Legal Standards Governing Exercise of Supplemental Jurisdiction

Because supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right,"

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), a "district court 'cannot exercise

supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.'"

*Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (quoting *Nowak v.

Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1182 (2d Cir. 1996)). "The state and federal

claims must derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 726. Federal

district courts may decline to exercise supplemental jurisdiction over a claim if "the district court

has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *Kolari

v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Itar-Tass Russian News

Agency v. Russian Kurier, Inc.*, 140 F.3d 422, 446-47 (2d Cir. 1998) ("[T]he discretion to decline

supplemental jurisdiction is available only if founded upon an enumerated category of

subsection 1367[c].").

A district court may decline to exercise supplemental jurisdiction in four circumstances:

"(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "Once a district court's discretion is triggered under [28 U.S.C.] § 1367(c), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari*, 455 F.3d at 122 (citing *Itar-Tass*, 140 F.3d at 446-47). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). However, "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote ... [judicial] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit. Co*., 358 F.3d 205, 214 (2d Cir. 2004) (citing *Gibbs*, 383 U.S. at 726). "The principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of factors always points that way." *Catzin v. Thank You & Good Luck Corp*., 899 F.3d 77, 86 (2d Cir. 2018).

When analyzing judicial economy, district courts consider several issues, including "their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation[.]" *Chenesky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013) (citing *Allard v. Arthur Anderson & Co.*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997)). "In weighing convenience, courts ask whether the case is

21

easily resolvable, and, if it is, whether it is more appropriate to resolve the case than decline to

exercise jurisdiction." *Chenesky*, 942 F. Supp. 2d at 392 (citing *Cement & Concrete Workers*

*Dist. Council Welfare Fund v. Anthony Frascone*, 68 F. Supp. 2d 166, 174 (E.D.N.Y. 1999)).

When evaluating fairness, district courts balance "questions of equity; Will declining jurisdiction

prejudice the parties, and are the parties responsible for any such prejudice?" *Id.* (citing *Pitchell*

*v. Callan,* 13 F.3d 545, 549 (2d Cir. 1994)).

## III.   ANALYSIS

### A.   Whether the Court Should Dismiss Plaintiffs' Federal Claims Against Defendants Based on the Settlement Agreement

After carefully considering the matter, the Court answers the question in the affirmative

as to the Wallkill Defendants, for the reasons stated in their memoranda of law (Dkt. No. 9-5,

17), but in the negative as to Defendant OU Boces, for the reasons stated in Plaintiffs' opposition

memorandum of law (Dkt. No. 15-1). To those reasons, the Court adds the following analysis.

A settlement agreement is a binding contract that is interpreted according to general

principles of contract law. *Powell v. Omicron, BBCP/PHD*, 497 F.3d 124, 128 (2d Cir. 2007);

*Golden Pac. Bancorp. v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001). "Under New York law, the

threshold question in a dispute over the meaning of a contract—including a release—is whether

its terms are ambiguous." *Caufield v. Colgate-Palmolive, Co.*, 16-CV-4170, 2017 WL 744600, at

*3 (S.D.N.Y. Feb. 24, 2016). "In determining whether a contract is ambiguous, the Court should

not torture the words to import ambiguity where the ordinary meaning leaves no room for

ambiguity." *Blaine v. Burnes*, 20-CV-1039, 2021 WL 5301545, at *4 (D. Conn. Nov. 15, 2021)

(internal quotation marks omitted). "[I]f the contract is capable of only one reasonable

interpretation, *i.e.,* is unambiguous, we are required to give effect to the contract as written."

*VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 (2d Cir. 2001) (internal quotation marks omitted); *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 141-42 (E.D.N.Y. 2015). "Where a contract is ambiguous, a court may look to extrinsic evidence to determine the parties' intent." *Caufield*, 2017 WL 744600, at *3 (citing *Golden Pac.*, 273 F.3d at 517).

### 1. Plaintiffs' Federal Claims Against the Wallkill Defendants

In December 2020, after Plaintiffs requested a Due Process hearing involving Defendant Wallkill based on the same allegations included in Plaintiffs' Complaint, the parties entered into a binding Settlement Agreement to "avoid[] protracted litigation associated with the commencement of a Due Process hearing . . . ." (Dkt. No. 9-3, at 3.) Despite entering into the Settlement Agreement (upon receiving advice of counsel), Plaintiffs argue that the Settlement Agreement did not include the federal claims asserted in this lawsuit, because the Settlement Agreement contains the following provision: "The resolution of the addressed herein shall have no effect and shall not act as a bar to the Parents and/or Student pursuing a claim for personal injuries as alleged in the Parents and Student's Notice of Claim and in any subsequent litigation resulting from the Notice of Claim." (*Id.* at 4-5.) Plaintiffs argue that their Notice of Claim, although not expressly stating anything about federal and state claims, cites "bullying from other students," cyber and verbal bullying and intimidation, physical menacing, and public humiliation—the allegations supporting their ADA and Section 504 claims. (Dkt. No. 15-1, at 9-10; Dkt. No. 9-4, at 3 [stating the "nature of the claim" is "[n]egligent supervision, failure to protect the claimant from bullying by other students; failure to protect claimant from assaults that occurred on school grounds and failure to keep the claimant separated from the bullying students"].)

Plaintiffs' argument is unavailing. "New York follows the common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions." *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2d Cir. 1996) (citation and internal quotation marks omitted); *Mandal v. City of N.Y.*, 02-CV-1234, 2008 WL 754666, at *2 (S.D.N.Y. Mar. 17, 2008) ("[I]n this case the '[s]ettlement [a]greement . . . must be read as a whole,' keeping in mind the controversy being settled and the purpose for which the release was given.") (quoting *Berman v. Parco*, 986 F. Supp. 195, 210 (S.D.N.Y. 1997)). To adopt Plaintiffs' argument, the Court would have to ignore the three separate provisions in the Settlement Agreement that expressly exclude the federal claims Plaintiffs currently assert against the Wallkill Defendants. The first page of the Settlement Agreement specifically states that Defendant Wallkill agrees to compensate Plaintiffs "in full settlement *of any and all claims that were or could have been brought in the Parents' aforementioned Due Process Hearing*," which, as the Agreement states in the first paragraph, was brought pursuant to "Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act," among other federal statutes. (Dkt. No. 9-3, at 3 [emphasis added].) The second page of the Settlement Agreement includes a provision waiving the federal claims: "In exchange for the services and consideration set forth above, the Parents *agree to waive any and all claims referenced in Paragraph 1 above* [which specifically includes Section 504 and the ADA] *that have or could have been brought to date . . . .*" (*Id.* at 4 [emphasis added].) Finally, the third page of the Settlement Agreement states, as follows:

> The above provisions are in full and final settlement, with prejudice, of any and all claims brought in the Parents' aforementioned Due Process Hearing request pursuant to 20 U.S.C. § 1415, Section 4404 of the N.Y. Education Law, and

> Section 200.5 of the Regulations of the Commissioner of
> Education of the State of New York, *Section 504 of the
> Rehabilitation Act of 1973*, and *the Americans with Disabilities Act*
> or *any other federal*, state or local law or regulation related to the
> Student's education . . . .

(*Id.* at 5 [emphasis added].)

On the other hand, the provision upon which Plaintiffs rely specifically states that the

Settlement Agreement will "not act as a bar to the Parents and/or Student pursuing *a claim for

personal injuries* as alleged in the Parents and Student's Notice of Claim and in any subsequent

litigation resulting from the Notice of Claim." (Dkt. No. 9-3, at 4-5.) The Court declines to read

this provision, which excludes "claims for personal injuries" noted in the Notice of Claim, in a

way that "renders meaningless" the express provisions settling "any and all claims" brought in

the Due Process hearing, including ADA and Section 504 claims, or claims brought under "any

other federal law," such as Plaintiffs' Section 1983 claim. *See Shuler v. State*, 48 A.D.3d 384,

384 (N.Y. App. Div. 1st Dep't 2008) (refusing to read a portion of a settlement agreement in a

way that would "render meaningless the express exclusion" of a claim noted in the agreement's

first paragraph); *Dechberry*, 124 F. Supp. 3d at 142 ("[W]ords of general release are clearly

operative not only as to all controversies and causes of action between the releasor and releasees

which had, by that time, actually ripened into litigation, but to all such issues which might then

have been adjudicated as a result of pre-existent controversies.") (internal quotation marks

omitted); *Tromp v. City of N.Y.*, 465 F. App'x 50, 52 (2d Cir. 2012) (summary order) ("[W]hen

general language is used in the releasing document, the release is to be construed most strongly

against the releasor."); *In re Brooklyn Res. Recovery, Inc.*, 309 A.D.2d 931, 932 (N.Y. App. Div.

2d Dep't 2003) ("The plain language of the release is controlling, regardless of one party's claim

that he intended something else.").

The Court's interpretation of the Settlement Agreement is further supported by recognizing the purpose of a Notice of Claim, which is a requirement under New York State law to bring *state law claims* against municipalities. *See Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("We start with the general rule that in a federal court, state notice-of-claim statutes apply to *state*-law claims.") (emphasis in original); *Diarra v. New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (summary order) ("Under New York law, '[a] notice of claim is a condition precedent to bringing a tort claim against a municipality.'") (quoting *O'Brien v. City of Syracuse*, 429 N.E.2d 1158 (1981)); *Croci v. Town of Haverstraw*, 175 F. Supp. 3d 373, 388-89 (S.D.N.Y. 2016) ("While 'New York's notice of claim requirements are *not applicable to [§] 1983 claims brought in federal court* . . . the requirements do apply to state law personal injury claims that are brought in federal court as related to [§] 1983 cases.") (emphasis added) (quoting *Gibson v. Comm'r of Mental Health*, 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006)); *Penree v. City of Utica*, 13-CV-1323, 2016 WL 915252, at *5 (N.D.N.Y. Mar. 4, 2016) (D'Agostino, J.) ("Federal courts . . . apply state notice of claim statutes to state law claims . . . ."). The purpose of the Notice of Claim supports Defendant Wallkill's argument that the parties intended to release the federal claims when entering into the Settlement Agreement.

Plaintiffs are precluded from asserting these federal claims against not only Defendant Wallkill, but the individual Defendants. The Settlement Agreement expressly states that "[Plaintiffs] shall hereby release and discharge the District, its assigns, members, officers, employees, representatives, agents, and attorneys . . . ." (Dkt. No. 9-3, at 5.) Plaintiffs do not challenge the fact that the release identified in this portion of the Settlement agreement includes

the individual Defendants,[6] nor does the Court find any reason that Defendant White (Pupil Personnel Director for Defendant Wallkill), Defendant Adams (Assistant Principal at Wallkill Central High School), and Defendant Salamone (Principal of Wallkill Central High School) were not "employees" at the time the parties executed the Settlement Agreement. (Dkt. No. 1, ¶¶ 5-7.)

In precluding Plaintiffs from asserting their federal claims against the Wallkill Defendants, the Court notes that its "conclusion is consistent with the clearly expressed purpose of the settlement agreement[,]" which is to "settle any and all claims that were or could have been brought in the Parents' aforementioned Due Process Hearing . . . ." *Bainbridge Nursing Home v. Zucker*, 170 A.D.3d 1367, 1370 (N.Y. App. Div. 3d Dep't 2019). (Dkt. No. 9-3, at 3.) The Court accordingly grants the Wallkill Defendants' motion to dismiss with respect to Plaintiffs' federal claims (i.e., ADA claim, Section 504 claim, and Section 1983 claim).

### 2. Plaintiffs' Defendant OU Boces

The Court does not reach the same conclusion with respect to Defendant OU Boces. Defendant OU Boces argues, without citing any supporting case law, that the Settlement Agreement provision releasing Defendant Wallkill and "its assigns, members, officers, employees, representatives, agents and attorneys" also applies to Defendant OU Boces, because that provision "is clearly intended to cover third parties who may not be an express signatory to the Stipulation where . . . the potential third party claims arise from a similar nexus of facts . . . ." (Dkt.  No. 14-2, at 5-6.)

The Court declines to read the Settlement Agreement so broadly as to include Defendant OU Boces, who was not a party to the negotiations, provided no consideration in support of the

---

[6]      (Dkt. No. 15-1, at 9-10.)

Settlement Agreement, and has failed to provide any reason that the Court should view it as an

"assign, member, officer, employee, representative, agent, or attorney" of Defendant Wallkill.

Further, Defendant OU Boces provides no evidence that it was an intended beneficiary of the

Settlement Agreement.[7] Defendant OU Boces—a separate entity, non-signatory, and non-

intended beneficiary—cannot rely on the Settlement Agreement to preclude Plaintiffs' federal

claims against it. *See Cohen v. DHB Indus., Inc.*, 658 F. App'x 593, 594-95 (2d Cir. 2016) ("As a

nonparty to the [settlement agreement], Cohen cannot assert rights on the basis of the contract

unless he is a third-party beneficiary, which he clearly is not.") (internal citations omitted);

*Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014) (affirming the district

court's ruling that "plaintiffs lack[ed] standing to enforce the agreements to which they were not

parties and of which they were not intended beneficiaries"). The Court therefore denies

Defendant OU Boces' motion for judgment on the pleadings to the extent it requests the Court to

dismiss Plaintiffs' federal claims against Defendant OU Boces due to the Settlement Agreement.

    **B.**    Whether the Court Should Dismiss Plaintiffs' Equal Protection Claim Against
           Defendant OU Boces

    After carefully considering the matter, the Court answers this question in the affirmative,

for the reasons stated in Defendant OU Boces' memorandum of law. (Dkt. No. 14-2.)

    As previously identified in Part I.B.2. of this Decision and Order, Defendant OU Boces

---

[7]    *See Comm'r of Dep't of Soc. Servs. of City of New York v. New York-Presbyterian Hosp.*, 164 A.D. 3d 93, 99 (N.Y. App. Div. 1st Dep't 2018) ("[I]t is well established that a third party cannot be deemed an intended beneficiary of a contract unless 'the parties' intent to benefit the third party . . . [is] apparent from the face of the contract[.]"); *In re Corp. Res. Servs., Inc.*, 849 F. App'x 320, 322 (2d Cir. 2021) (summary order) ("Although it is 'well-settled' that the contract need not expressly state the intention to benefit a third party, [t]he contract must 'clearly evidence' an intent by the parties to permit enforcement by the third party . . . .") (internal citations and quotation marks omitted).

argues that the Court must dismiss Plaintiffs' Equal Protection Claim against it for two reasons: (1) Plaintiffs' Complaint contains no factual allegations supporting a plausible inference that Defendant OU Boces treated E.V. differently because of her learning disabilities (i.e., that similarly situated students were treated differently than E.V.); and (2) disability status is not a suspect classification under the Equal Protection Clause. (Dkt. No. 14-2, at 10-11.) Plaintiffs argue that, not only does "clearly-established law allow[] disability harassment victims [to] proceed under the Equal Protection Clause, as enforced through § 1983," but clearly established law does not require Plaintiffs to "prove that similarly-situated students were treated differently." (Dkt. No. 15-1, at 17-18.)

The Court previously addressed this issue in a case brought by parents of a student who alleged disability-based harassment occurring at school:

> Generally, to maintain an equal protection claim, a plaintiff must "show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008) (internal quotation marks and citation omitted). A plaintiff must also show that the alleged disparity in treatment cannot survive the appropriate level of scrutiny. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). A "disability is not a suspect classification under the Equal Protection Clause." *Chick v. Cty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013). … However, "[a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Sharpe v. City of New York*, 11-CV-5494, 2013 WL 2356063, at *3 n.5 (E.D.N.Y. May 29, 2013) (internal quotation marks and citations omitted). This is called a "class-of-one" claim.

29

In a class-of-one context, the plaintiff uses "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Prestopnik v. Whelan*, 249 F. App'x 210, 212-13 (2d Cir. 2007). There must be "an extremely high degree of similarity" between the class of one plaintiff and the "alleged comparators in order to succeed on an equal protection claim." *Sloup v. Loeffler*, 745 F. Supp. 2d 115, 128 (E.D.N.Y. 2010); *see also Neilson v. D'Angelis*, 409 F.3d 100, 1004 (2d Cir. 2005), *overruled on other grounds, Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008). "Specifically, such plaintiffs must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Camac v. Long Beach City Sch. Dist.*, 09-CV-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (citations and quotation marks omitted). "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are prima facie identical." *Kamholtz v. Yates Cty.*, 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008) (quoting *Neilson,* 409 F.3d at 105).

*Terrill v. Winham-Ashland-Jewett Central Sch. Dist.,* 176 F. Supp. 3d 101 (N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) ("'[C]lass of one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'") (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)); *Kaiser v. Highland Central Sch. Dist.*, 08-CV-0436, 2008 WL 5157450, at *2 (N.D.N.Y. Dec. 8, 2008) (Kahn, J.) ("Therefore, a plaintiff asserting an Equal Protection claim under 42 U.S.C. § 1983 based on disability discrimination is asserting a 'class of one' Equal Protection claim, to which the courts apply rational basis analysis.").

Here, Plaintiffs do not argue that their Complaint contains the requisite factual allegations plausibly suggesting that Defendant OU Boces treated E.V. differently than her comparator(s), nor has this Court identified in its review of Plaintiffs' Complaint any factual allegations plausibly suggesting this element of Plaintiffs' Equal Protection claim. (Dkt. No. 1, ¶¶ 55-60.)  The Court accordingly grants Defendant OU Boces' motion for judgment on the pleadings with respect to this claim. *See Bikur Cholim, Inc. v. Vill. Of Suffern*, 664 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2009) (dismissing equal protection class-of-one claim because "plaintiffs have made no allegations of similarly situated property owners . . . [and w]ithout any comparators . . . plaintiffs' claim under the Equal Protection Clause cannot stand"); *Talley v. Brentwood Union Free Sch. Dist.*, 08-CV-0790, 2009 WL 1797627, at *8 (E.D.N.Y. June 24, 2009) (dismissing plaintiff's class of one equal protection claim because "the absence of factual allegations of any similarly situated individual is fatal to [the] claim"); *Econ. Opportunity Comm'n of Nassau Cty. v. Cty. of Nassau, Inc.*, 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999) (dismissing equal protection claims because plaintiffs did not allege "similarly situated entities which were treated differently from the plaintiffs"); *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 341 (E.D.N.Y. 2014) (finding plaintiff failed to state a claim for violation of the Equal Protection Clause because plaintiff had "not adequately alleged the extremely high degree of similarity between herself and her fellow students to survive a motion to dismiss").

**C.**   Whether the Court Should Dismiss Plaintiffs' ADA and Section 504 Claims Against Defendant OU Boces

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiffs' opposition memorandum of law. (Dkt. No. 15-1.)

"Claims under Title II of the ADA and [S]ection 504 of the Rehabilitation Act are

analyzed identically." *Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 241 (W.D.N.Y.

July 11, 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). "To make

out a *prima facie* case under the ADA or Rehabilitation Act, a plaintiff must show '(1) that [she]

is a qualified individual with a disability; (2) that the defendants are subject to [the pertinent

statute]; and (3) that [she] was denied the opportunity to participate in or benefit from

defendants' services, programs, or activities, or was otherwise discriminated against by

defendants, by reason of [her] disability.'" *Estate of D.B. by Briggs v. Thousand Islands Cent.*

*Sch. Dist.*, 327 F. Supp. 3d 477, 527 (N.D.N.Y. Aug. 29, 2018) (Suddaby, C.J.) (quoting *Preston*,

876 F. Supp. 2d at 241).

> Denial of "the opportunity to participate in or benefit from
> defendants' services" does not require that the student be
> physically prevented from access: "[r]ather, a plaintiff must
> establish . . . harassment [by] students that is so severe, pervasive,
> and objectively offensive, and that so undermines and distracts
> from the victims' educational experience, that the victim-students
> are effectively denied equal access to an institution's resources and
> opportunities."

*Preston*, 876 F. Supp. 2d at 241 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650-

51, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

"[A] school's liability for harassment by and against students may be established where

'the defendant's indifference was such that the defendant intended the discrimination [e.g.,

discriminatory peer-on-peer harassment] to occur." *Id.* "It is not necessary that the defendant

fully appreciated the harmful consequences of that discrimination . . . [i]nstead, deliberate

indifference can be found when the defendant's response to known discrimination 'is clearly

unreasonable in light of the known circumstances.'" *Id.* (quoting *Gant v. Wallingford Bd. of*

*Educ.*, 195 F.3d 134, 141 (2d Cir. 1999)).

Defendant OU Boces initially challenges Plaintiffs' ADA and Section 504 claims by arguing that "Plaintiffs totally fail to make any factual allegation linking [E.V.'s] disability and the claimed bullying." (Dkt. No. 14-2, at 8-9.) Defendant OU Boces attempts to persuade the Court that Plaintiffs' allegations regarding E.V.'s classmates calling her "Autistic E" is "insufficient to conclude that the behavior at issue was related to her disability." (*Id.* at 9.) The Court disagrees. The fact that E.V.'s classmates called her "Autistic E" plausibly suggests, not only that they had knowledge of her disability, but that the alleged bullying was related to her disability. *See Preston*, 876 F. Supp. 2d at 242 (denying motion to dismiss because, in part, "[t]he alleged harassing conduct included the use of insults which specifically referenced the perceived nature of A.P.'s disability, such as . . . 'autistic piece of shit'"); *Spring v. Allegany-Limestone Central Sch. Dist.*, 14-CV-0476, 2017 WL 6512858, at \*5-6 (W.D.N.Y. Dec. 20, 2017) (stating that "insults which specifically referenced the perceived nature of [a plaintiff's] disability have been found to support a disability discrimination," and finding the same outcome where the plaintiff alleged he had been called a "retard" and a "dummy").[8]

---

[8] The Court notes that Defendant OU Boces further argues that the allegations Plaintiffs include in their Complaint regarding E.V.'s assault in the cafeteria of Marguerite Flood High School on October 23, 2018, indicate that the incident was unrelated to E.V.'s disability and rather stemmed from E.V. allegedly spreading a rumor. (Dkt. No. 14-2, at 9; Dkt. No. 1, at ¶ 59 ["On or about October 23, 2018, Infant Plaintiff E.V. was assaulted by another student, A.P., while in the cafeteria. A.P. physically approached E.V. while she was eating lunch in the cafeteria and accused E.V. of spreading a rumor and . . . [t]he moment E.V. stood up from her seat in the cafeteria, she was assaulted by A.P."].) Plaintiffs, on the other hand, argue that, because the "Complaint alleges that E.V.'s classmates at BOCES were physically and verbally harassing her because she is autistic," "[t]he jury may . . . infer that all subsequent harassment was motivated by her disability." (Dkt. No. 15-1, at 15-16.) The Court declines to decide this issue on a motion for judgment on the pleadings, especially considering that the Court has found that Plaintiffs have plausibly alleged that other instances of harassment occurred "because of" E.V.'s disability. *Cf. Jackson v. Kemp*, 88-CV-2919, 1991 WL 39300, at \*1 (S.D.N.Y. Jan. 22, 1991) (denying motion for judgment on the pleadings where fact issues remained); *Bond v. Sterling, Inc.*, 997 F. Supp. 306, 312 (N.D.N.Y. Mar. 11, 1998) (McAvoy, J.) ("Such denials raise material fact issues as to whether defendants unlawfully discriminated against plaintiff . . . .

The Court likewise will not dismiss Plaintiffs' ADA and Section 504 claims against Defendant OU Boces based on its argument that "Plaintiffs fail to plausibly allege that OUBOCES had actual knowledge of [the alleged] behavior." (Dkt. No. 14-2, at 9.) Plaintiffs' Complaint explicitly alleges that, "[o]n multiple occasions, Plaintiff parent Janice Vincenzo reported these issues to several employees at the Marguerite Flood High School . . ." and "[n]o action was taken to protect E.V. on the school bus." (Dkt. No. 1, at ¶ 58.) Taking these factual allegations as true, as the Court must at this stage in the lawsuit,[9] the Court finds that Plaintiffs have met the requisite pleading requirements.

Accordingly, the Court denies Defendant OU Boces' motion for judgment on the pleadings with respect to Plaintiffs' ADA and Section 504 claims.

> **D.**    Whether the Court Should Dismiss Plaintiffs' Negligent Supervision Claim Against Defendant OU Boces

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated below.

In its motion, although Defendant OU Boces argued that the Court should decline supplemental jurisdiction over Plaintiffs' state law claim (i.e., their claim for negligent supervision) if the Court dismissed the federal claims against it, Defendant OU Boces did not argue that Plaintiffs failed to sufficiently plead this claim. (Dkt. No. 14-2, at 11; Dkt. No. 16, at 6-7.) Therefore, Plaintiffs' state law claim against Defendant OU Boces survives its motion for

---

Accordingly, plaintiff's motion for judgment on the pleadings as to Count One is DENIED.").

[9]    As indicated above in Parts II.A. and II.B. of this Decision and Order, in evaluating such motions for judgment on the pleadings, district courts must accept all allegations in the Complaint as true and draw all reasonable inferences in the Plaintiffs' favor. *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).

judgment on the pleadings.

> **E.**   Whether the Court Should Grant Plaintiffs' Request for Leave to Amend Their Complaint

After carefully considering the matter, the Court answers this question in the negative,

for the reasons stated below.

In its opposition memorandum of law, Plaintiffs included a sentence requesting leave to

amend, should the Court grant any portion of the Bank's motion to dismiss. (Dkt. No. 15-1, at

22.) As the Court explained in *Sobon v. Horizon Eng'g Assocs., LLP*, this request to amend

(from a counselled Plaintiff) is procedurally defective:

> Plaintiff's purported cross-motion to amend her complaint consists
> of one sentence at the conclusion of her memorandum of law
> requesting leave to amend her complaint pursuant to Fed. R. Civ.
> P. 15(a)(2). Such a motion is procedurally defective. Plaintiff has
> failed to comply with Local Rule [15.1] of the Local Rules of
> Practice for this Court, requiring the attachment of an unsigned
> copy of the proposed amended pleading to her motion papers,
> which must identify the amendments in the proposed pleading,
> either through the submission of a red-lined version of the original
> pleading or other equivalent means.

*Sobon v. Horizon Eng'g Assocs., LLP*, 13-CV-1431, 2014 WL 4889340, at *11 (N.D.N.Y. Sept.

30, 2014) (Suddaby, C.J.).

Further, the Court holds that, with the exception of Plaintiffs' Section 1983 claim against

Defendant OU Boces, leave to amend is unwarranted. Pursuant to Fed. R. Civ. P. 15(a)(2), leave

to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason

to not grant leave to amend[,] such as undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the

amendment . . . ." *Foman*, 371 U.S. at 182. "[W]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Manship v. T.D. Bank, N.A.*, 12-CV-0329, 2021 WL 981587, at *13-14 (N.D.N.Y. Mar. 16, 2021) (Suddaby, C.J.) (internal citations and quotation marks omitted). "'[A]n opportunity to amend is not required where the defects in plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.'" *Manship*, 2021 WL 981587, at *13-14 (quoting *Sorrentino v. Barr Labs Inc.,* 09-CV-0591, 2010 WL 2026135, at *5 (N.D.N.Y. May 20, 2010)).

In this Decision and Order, the Court dismisses the following four claims: (1) the ADA claim against the Wallkill Defendants; (2) the Section 504 claim against the Wallkill Defendants; (3) the Section 1983 claim against the Wallkill Defendants;[10] and (4) the Section 1983 claim against Defendant OU Boces. The defects in Plaintiffs' federal claims against the Wallkill Defendants are all substantive, as the Court described in previous portions of this Decision and Order. Additionally, any further amendment of those claims would be futile because Plaintiffs cannot plead facts sufficient to show that the Settlement Agreement does not preclude them from asserting the federal claims against the Wallkill Defendants. Accordingly, amendment is not required, and the claims will be dismissed with prejudice. *Foman*, 371 U.S. at 182; *Manship*, 2021 WL 981587, at *13-14.

The Court finds, however, that Plaintiffs may be able to provide additional factual allegations regarding their Section 1983 claim against Defendant OU Boces, because they have not previously amended their Complaint and the defects could be "merely formal," rather than

---

[10]     The Court notes that its dismissal of the Equal Protection claim under 42 U.S.C. § 1983 includes the dismissal of claims brought against the individual Defendants, as well as any claim against Defendant Wallkill for *Monell* liability. (Dkt. No. 9-5, at 11-12.)

substantive. *Manship*, 2021 WL 981587, at *13-14. As a result, those claims are dismissed without prejudice.

### F.  Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claim Against the Wallkill Defendants

After carefully considering the matter, the Court answers the question in the negative as to the Wallkill Defendants, for the reasons stated in their memoranda of law. (Dkt. No. 9-5, 17).

Because Plaintiffs' ADA and Section 504 claims against Defendant OU Boces will survive its motion for judgment on the pleadings, the Court need not analyze whether to exercise supplemental jurisdiction over any state law claim against it. However, because the Court is dismissing Plaintiffs' federal claims against the Wallkill Defendants with prejudice, only a state law claim remains against them—a fact requiring that the Court analyze whether to retain jurisdiction over that claim.

### 1.  "Same Case or Controversy"

Although a close call, the Court finds that it does not have supplemental jurisdiction over Plaintiffs' state law negligent supervision claim against the Wallkill Defendants. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims *that are so related to claims in the action* within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a) (emphasis added). "On issues of state law, federal courts exercise supplemental jurisdiction where the claims arise out of a 'common nucleus of operative fact' as the federal claims over which they have original jurisdiction, such that they 'form part of the same case or controversy.'" *Thompson v. Urban Recovery House, LLC*, 20-CV-9581, 2022 WL 589957, at *7 (S.D.N.Y. Feb. 28, 2022); *Promisel v. First Am. Artificial Flowers, Inc.*, 943

37

F.2d 251, 254 (2d Cir. 1991) ("A court has the power to exercise pendent jurisdiction over plaintiff's state claims together with his federal claims if they derive from 'a common nucleus of operative fact . . . ."). "Claims derive from a common nucleus of operative fact where 'the facts underlying the federal and state claims substantially overlapped or the federal claims necessarily brought the facts underlying the state claim before the court.'" *Kriss v. Bayrock Grp., LLC*, 10-CV-3959, 2017 WL 4023351, at \*2 (S.D.N.Y. Sept. 12, 2017) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006)). Simply put, "[t]o form part of the same case or controversy, the claims must 'arise out of the same series of events.'" *Thompson*, 2022 WL 589957, at \*8 (quoting *Guerra v. Trece Corp.*, 18-CV-0625, 2020 WL 7028955, at \*6 (S.D.N.Y. Nov. 30, 2020)).

At first glance, Plaintiffs' negligent supervision claim against the Wallkill Defendants seems to share a "common nucleus of operative fact" with Plaintiffs' ADA, Section 504, and negligent supervision claims against Defendant OU Boces. Upon closer examination, however, Plaintiffs' negligent supervision claim against the Wallkill Defendants "rest[s] on essentially unrelated facts." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (citing *Young v. New York City Transit Auth.*, 903 F.2d 146, 162-64 (2d Cir. 1990) and *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1033 (2d Cir. 1979)). The Court recognizes that these claims are "connected in a very broad sense," in that they address the alleged bullying E.V. endured while matriculating through the Wallkill and OU-Boces school districts; however, this "loose factual connection" is not enough to establish supplemental jurisdiction. *Burks v. City of New York*, 17-CV-0177, 2018 WL 6199550, at \*7-9 (E.D.N.Y. Nov. 28, 2018); *Cellucci v. O'Leary*, 19-CV-2752, 2021 WL 242806, at \*5 (S.D.N.Y. Jan. 25, 2021) (finding no supplemental jurisdiction

where "[t]he two sets of claims require entirely separate analysis and consideration of entirely different sets of facts").

"[T]he location, time period, and overall circumstances of the two claims will be relevant to their similarity and whether they are part of the same 'case or controversy.'" *Burks*, 2018 WL 6199550, at *8. To begin, "courts have held that there is no common nucleus of operative fact where the events underlying the federal claims occur at a different time than the events underlying the state law claims." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 394 (E.D.N.Y. June 29, 2007) (citing *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1033 (2d Cir. 1980)); *Bray v. City of New York*, 356 F. Supp. 2d 277 (S.D.N.Y. 2004)). Plaintiffs' negligent supervision claim against the Wallkill Defendants stems from the alleged bullying E.V. endured while enrolled as a student with Defendant Wallkill during 8th and 9th grade (i.e., through the 2017/2018 school year). (Dkt. No. 1, at ¶ 33.) On the other hand, Plaintiffs' remaining claims against Defendant OU-Boces rely upon alleged events occurring during her time at Marguerite Flood High School, which began in the 2018/2019 school year. (Dkt. No. 1, at ¶¶ 33, 55-57.) *See also Zeltman v. Infigy Solutions, LLC*, 20-CV-0571, 2021 WL 2076214, at *5-6 (N.D.N.Y. May 24, 2021) (Kahn, J.) (highlighting, before finding no supplemental jurisdiction existed, that the plaintiff "fail[ed] to allege any temporal overlap between the two sets of allegations"); *Burks*, 2018 WL 6199550, at *8 (highlighting that original jurisdiction was "premised on plaintiff's excessive force claim," which was based on events on October 14, 2015, whereas the plaintiff's state-law negligence claim was "based on events that occurred from October 15 through October 21").

Plaintiffs' allegations against the Wallkill Defendants and Defendant OU Boces, although

generally regarding deliberate indifference and failure to address harassment based on E.V.'s disability, are based on separate facts. *See Go New York Tours, Inc. v. Tour Central Park, Inc.*, 19-CV-9803, 2021 WL 3721359, at *3 (S.D.N.Y. Aug. 20, 2021) (finding "no common nucleus of operative fact" between two claims where they were "based on fundamentally different facts"). With respect to the Wallkill Defendants, Plaintiffs allege that E.V. was called names and sexually assaulted by other students, that she was preyed upon by another student who pressured E.V. into sending partially nude photographs of herself, and that she suffered a concussion after being attacked by other students. (Dkt. No. 1, at ¶¶ 20, 23-24, 34 40-41.) On the other hand, Plaintiffs' allegations against Defendant OU Boces regard name-calling and an unrelated physical assault perpetrated by a different subset of students than those she went to school with while enrolled with Defendant Wallkill; and the allegations against Defendant OU Boces do not regard sexual assault or pressure from other students to engage in sexual acts. (*Id.* at ¶¶ 55-60.) Plaintiffs' allegations against the administrators at both Defendant Wallkill and Defendant OU Boces, including how often Plaintiffs contacted them regarding the harassment and the administrators' responses, also vary, which directly affects the deliberate indifference and negligent supervision claims against them. (*Id.* at ¶¶ 21, 24-25, 29, 31, 44, 47, 55, 58.)

Likewise, Plaintiffs' negligent supervision claim against the Wallkill Defendants implicates a different group of witnesses than Plaintiffs' federal claims against Defendant OU Boces. *Cf. Donlon v. Bd. of Educ. Greece Cent. Sch. Dist.*, 06-CV-6027, 2007 WL 4553932, at *5 (W.D.N.Y. Dec. 20, 2007) (finding claims "derive[d] from a common nucleus of operative fact" where the claims "require[d] *many of the same witnesses*, much of the same evidence, and determination of many of the same facts" [emphasis added]). In this case, as Plaintiffs

affirmatively state in their motion, Defendant OU Boces and Defendant Wallkill are separate entities. (Dkt. No. 15-1, at 10.) Accordingly, the teachers, students, and administrators with relevant knowledge regarding E.V.'s alleged harassment vary between the two defendant school districts. In the same vein, Defendant Wallkill and Defendant OU-Boces likely have different policies regarding how to report, address, and/or resolve the type of harassment Plaintiffs allege in this case, which could affect each respective entity's liability regarding the claims against them. *Cf. Atkinson v. Singh*, 19-CV-3779, 2022 WL 137634, at *4 (S.D.N.Y. Jan. 14, 2022) ("[A common nucleus of operative fact] will be true, for example, where both a plaintiff's state and federal labor law claims 'arise out of the same compensation policies and practices . . . .'") (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002)).

Ultimately, for these reasons, the Court finds that Plaintiffs' negligent supervision claim against the Wallkill Defendants does not derive from a common nucleus of operative fact as compared to the claims over which the Court maintains original jurisdiction (i.e., Plaintiffs' federal claims against Defendant OU Boces). *Kriss,* 2017 WL 4023351, at *2. The Court therefore does not have supplemental jurisdiction over Plaintiffs' negligent supervision claim against the Wallkill Defendants.[11]

---

[11]     *Cf. Greenport Gardens, LLC v. Village of Greenport*, 19-CV-2330, 2021 WL 4480551, at *19 (E.D.N.Y. Sept. 30, 2021) ("The trespass claims against Morris and Smith are, at this point, essentially a separate lawsuit against parties not involved in the remaining federal action and arising solely under a state law trespass theory. The Court therefore declines to exercise supplemental jurisdiction over these claims."); *Bell v. SL Green Realty Corp.*, 19-CV-8153, 2021 WL 516575, at *8 (S.D.N.Y. Feb. 11, 2021) ("Here, the state law claims are asserted against a different defendant than the defendant of the surviving [claim] and are factually distinct claims arising out of different events. Accordingly, the state law claims against the Union are dismissed."); *Francis v. City of Schenectady*, 20-CV-0703, 2021 WL 1124600 (N.D.N.Y. Mar. 24, 2021) (Kahn, J.) (finding an "insufficient evidentiary overlap" and "no common nucleus of operative fact" between Plaintiff's claims against the City related to his arrest/prosecution and his claims against the County).

### 2.   Discretionary Supplemental Jurisdiction

Further, the Court, in its discretion, can decline supplemental jurisdiction for one of the

following four reasons:

> (1) the claim raises a novel or complex issue of State law, (2) the
> claim substantially predominates over the claim or claims over
> which the district court has original jurisdiction, (3) the district
> court has dismissed all claims over which it has original
> jurisdiction, or (4) in exceptional circumstances, there are other
> compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).

As the parties highlight in their briefing, New York state appellate courts are split on

whether a plaintiff's failure to specifically identify individual defendants in the Notice of Claim

precludes a plaintiff from proceeding against those individual defendants in the subsequent

lawsuit. (Dkt. No. 15-1, at 9; Dkt. No. 17, at 9 ["Plaintiff is correct in pointing out divergent

precedent among the New York appellate courts on the consequences of failing to name an

individual defendant in a Notice of Claim."].) This split in authority on the requirements of a

Notice of Claim, which is a creature of New York state law, supports a decision to decline to

exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1); *Valencia ex rel. Franco v. Lee,*

316 F.3d 299, 306 (2d Cir. 2003) ("In other cases, however, where the federal claims had been

dismissed at a relatively early stage and the remaining claims involved issues of state law that

were unsettled, we have concluded that the exercise of supplemental or pendent jurisdiction was

an abuse of discretion.").

Additionally, Plaintiffs' remaining state law claim against the Wallkill Defendants likely

would "substantially predominate" over their remaining federal claims against Defendant OU

Boces, because the factual allegations regarding the alleged harassment that E.V. endured while

42

she was matriculated through the Wallkill School District spanned a longer period of time and involved additional instances of harassment than those alleged against Defendant OU Boces. *See Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) ("'[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.'") (quoting *Gibbs*, 383 U.S. at 726-27); *Lautman v. 2800 Coyle St. Owners Corp.*, 13-CV-0967, 2014 WL 2200909, at *8 (E.D.N.Y. May 23, 2014) (finding the state law claims would "substantially predominate" the remaining federal law claim where the state law claim "would require the court to examine the conduct of the defendants against whom the federal claims have been dismissed spanning a substantially longer period of time and involving numerous [pieces of evidence and actions by the dismissed defendants]"); *Hall v. NYS Dep't of Corrections and Cmty. Supervision*, 12-CV-0377, 2015 WL 901010, at *31 (N.D.N.Y. Mar. 3, 2015) (Suddaby, C.J.) (declining supplemental jurisdiction for three reasons, including because the state law claims "substantially predominate[d] over (and [were] sufficiently distinct from) Plaintiff's surviving federal claims against [the undismissed defendants]").

Further, "[h]aving dismissed the only claims against [the Wallkill Defendants] over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state and common law claims at this early stage in the litigation." *Shi Ming Chen v. Hunan Manor Enter., Inc.*, 17-CV-0802, 2018 WL 1166626, at *9, n. 4 (S.D.N.Y. Feb. 15, 2018); *Cho v. Osaka Zen Spa*, 19-CV-7935, 2021 WL 1736813, at *6 (S.D.N.Y. May 3, 2021) ("The Court has dismissed . . . the only claims providing [it] with original jurisdiction over [the

Moving Defendants]. Although the Court has supplemental jurisdiction over the remaining state law claims . . . , it will decline to exercise this jurisdiction."); *Germano v. Dzurenda*, 09-CV-1316, 2011 WL 1214435, at *20 (D. Conn. Mar. 28, 2011) ("All federal claims against [eleven individual defendants] have been dismissed. The Court declines to exercise supplemental jurisdiction over these defendants, and all state claims against them are dismissed without prejudice.").

The Court notes that, as a result of its declining to exercise supplemental jurisdiction, Plaintiffs might have to proceed in two different forums and, as Plaintiffs point out in their brief, potentially subject E.V. to two depositions and trials. (Dkt. No. 15-1, at 20.) *See also Warburton v. Cty. of Ulster*, 17-CV-1219, 2020 WL 6700221, at *11 (N.D.N.Y. Nov. 13, 2020) (Suddaby, C.J.) ("When evaluating fairness, district courts balance 'questions of equity; Will declining jurisdiction prejudice the parties, and are the parties responsible for any such prejudice?'") (quoting *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994)).[12] However, the Court finds that, in viewing the totality of the circumstances, declining supplemental jurisdiction is nonetheless appropriate. "When analyzing judicial economy, district courts consider several issues, including: "their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation[.]" *Chenesky*, 942 F. Supp. 2d 392 (citing *Allard,* 957 F. Supp. at 425). Here, the Court has little familiarity with the facts of this case outside of those included in Plaintiffs' Complaint, the case is in the beginning stages (in that discovery has not yet commenced), and "New York state courts are better positioned to address [Plaintiffs'] state law claim." *Warburton*, 2020 WL 6700221, at *11.

---

[12]     The Court notes that, had Plaintiffs elected to bring their lawsuit in state court, they could have avoided this issue.

Further, Plaintiffs' negligent supervision claim against the Wallkill Defendants, which, as described above, is based on multiple allegations of bullying and the Wallkill Defendants' alleged failure to properly respond to that harassment over a years-long period, does not seem "easily resolvable . . . ." *Warburton*, 2020 WL 6700221, at *11 ("In weighing convenience, courts ask whether the case is easily resolvable, and, if it is, whether it is more appropriate to resolve the case than decline to exercise jurisdiction.") (internal quotation marks omitted).

For all these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' negligent supervision claim against the Wallkill Defendants.

**ACCORDINGLY,** it is

**ORDERED** that Defendant OU Boces' motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Dkt. No. 14) is **GRANTED** with respect to Plaintiffs' Section 1983 claim, which is **DISMISSED without prejudice** to refiling upon a successful motion to amend within **THIRTY (30) DAYS** of the filing of this Decision and Order (and thereafter with prejudice); and it is further

**ORDERED** that Defendant OU Boces' motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Dkt. No. 14) is **DENIED** with respect to the remaining claims against it, consisting of the following:

(a)  the ADA claim against Defendant OU Boces;

(b)  the Section 504 claim against Defendant OU Boces; and

(c)  the state law negligent supervision claim against Defendant OU Boces;

and it is further

**ORDERED** that the Wallkill Defendants' motion to dismiss for failure to state a claim

under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 9) is **<u>GRANTED</u>** with respect to the following claims, which are **<u>DISMISSED</u> with prejudice**:

       (d)  the ADA claim against the Wallkill Defendants;

       (e)  the Section 504 claim against the Wallkill Defendants; and

       (f)  the Section 1983 claim against the Wallkill Defendants; and it is further;

    **ORDERED** that the Wallkill Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 9) is **<u>GRANTED</u>** with respect to the state law claim against them, which is **<u>DISMISSED</u> without prejudice** to refiling in New York State Court within thirty (30) days of this Decision and Order, pursuant to 28 U.S.C. § 1367(d).


Date:   March 29, 2022
        Syracuse, New York


                        Hon. Glenn T. Suddaby
                        Chief U.S. District Judge